UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES RAY SMITH,

       Petitioner,                   Case No. 17-CV-13614
                                       HON. GEORGE CARAM STEEH
v.                                      UNITED STATES DISTRICT JUDGE

RANDEE REWERTS,[1]

       Respondent.
_____/

## ORDER DENYING PETITIONER'S MOTION FOR RECONSIDERATION (Doc. 16) AND MOTION TO STAY PROCEEDINGS AND HOLD PETITION IN ABEYANCE (Doc. 19)

Petitioner, Charles Ray Smith, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree murder, Mich. Comp. Laws § 750.316, two counts of assault with intent to rob while armed, Mich. Comp. Laws § 750.89, one count of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, one count of conspiracy to commit armed robbery, Mich. Comp. Laws §§ 750.157a and 750.529, one count of first-degree home invasion, Mich. Comp. Laws §

---

[1] The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rule 2(a), 28 U.S.C. § 2254. The Court substitutes Warden Randee Rewerts, Petitioner's current warden, in the caption in place of Shane Jackson.

-1-

750.110a(2), and two counts of unlawful imprisonment, Mich. Comp. Laws § 750.349b. On September 27, 2018, the court denied Petitioner's habeas petition. (Doc. 14).

Now before the court is Petitioner's motion for reconsideration on the grounds that he only recently learned that from 2003 through 2007, the Michigan State Police (MSP) Lansing Laboratory experienced irregularities with DNA analysts' proficiency examinations. Specifically, Petitioner claims he learned of this when another inmate provided him with a transcript of a *Daubert* hearing in a criminal case brought in the Wayne County Circuit Court in 2009. In that case, *People v. Carter*, No. 08-11155, (Doc. 16-1), DNA analyst Ann Chamberlain, who used to work for the MSP lab, testified that Lynne Helton, the DNA analyst who examined DNA samples from the rape victim and who testified in Petitioner's case, took the proficiency examination for her supervisor Charles Barna in 2003. (Doc. 16-1 at PgID 5119-20). During the investigation below, Helton placed the DNA profile gathered from the rape victim's vaginal swipe on the national DNA database, and it came back with a match to the Petitioner. Helton then obtained a new DNA sample from the Petitioner and determined that it matched the DNA sample from the rape victim's vaginal swab. Helton

testified at Petitioner's trial that only one individual in 16.2 quadrillion African-Americans would have the same DNA profile as Petitioner.

Petitioner argues that Chamberlain's testimony also raises questions about the credibility of Melinda Jackson who collected the DNA samples in this suit.  (Doc. 21 at PgID 5354).  Petitioner claims that the discovery of this allegedly new evidence invalidates the DNA evidence which supported his conviction, and amounts to a *Brady* violation because the prosecution did not disclose this evidence during discovery.  Petitioner's post-conviction counsel submitted an affidavit that she learned of the proficiency examination misconduct in early September, 2018.  Petitioner claims that he should be allowed to return to state court to develop the new evidence, *Brady* claim, and ineffective assistance of counsel claim, and that this court should stay and abate this petition pending the presentation of his claims in state court.  At the invitation of the court, the government has filed a response which the court has duly considered.  For the reasons set forth below, Petitioner's motion for reconsideration and motion to stay shall be denied.

Local Rule 7.1(h)(3) provides that a party seeking reconsideration "must not only demonstrate a palpable defect by which the Court and the

parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." For the reasons set forth below, Petitioner is not entitled to a stay of this court's order denying his habeas petition because Petitioner has failed to demonstrate that he was unable to learn of the allegedly new evidence sooner. Moreover, even if Petitioner could not have learned of the evidence involving misconduct in proficiency examinations in the MSP laboratory, such does not require a different disposition in this case.

    A.    *Sufficiency of the Evidence*

The court first considers Petitioner's argument that the DNA evidence in this case is not reliable because Lynne Helton took a proficiency test for her superior Charles Barna while at the MSP Laboratory. As an initial matter, the court notes that Petitioner's theory at trial and in his habeas petition is that he had consensual sex with the rape victim. The crux of his habeas petition was that his counsel was ineffective for failing to introduce witnesses who would have supported his theory that he knew the rape victim and was in a romantic relationship with her. Given his theory that he had consensual sex with the rape victim, the reliability of the DNA evidence

was not central to Petitioner's defense. Also, the court sets forth the non-DNA evidence which supports Petitioner's conviction. There was physical evidence that a rape took place based on bleeding and vaginal bruising which was consistent with a sexual attack. The rape victim gave a partial description of her assailant which matched the Petitioner, and testified that she did not know the Petitioner and had never had consensual sex with him. There was testimony that Petitioner had been seen with the co-defendants on six occasions, that Petitioner was present at a meeting the night before the rape when Petitioner and his co-defendants agreed to hunt for rival gang members to take revenge for the abduction of co-defendant Steven Bard's brother; and Petitioner was present with co-defendant Bard the morning after the sexual attack and home invasion.

In addition to the non-DNA evidence which supports Petitioner's conviction, Helton's involvement in taking her superior, Charles Barna's, proficiency examination in 2003 does not invalidate her DNA analysis in this case. As the government points out, her superior had her take his proficiency examinations because she was good at DNA testing. There is no evidence that there was any flaw in the DNA tests performed in this case some four years later.

In *Harris v. Wolfenbarger*, No. 05-cv-74316, 2007 WL 2421545, at *15 (E.D. Mich. Aug. 27, 2007) (Cohn, J.), a case decided nearly a year prior to Petitioner's trial, the court considered a similar argument involving these same forensic scientists. In that case, the petitioner argued he was entitled to habeas relief because Charles Barna had collected and evaluated DNA samples, and Barna had engaged in misconduct by having his subordinate scientist, Lynne Helton, perform his proficiency tests. Thus, petitioner argued Barna's analysis must be ignored. *Id.* The court rejected the argument on the grounds that an independent lab confirmed the DNA profile, the incident involving the misconduct was removed in time from the analysis, and Barna was thoroughly cross-examined. *Id.*

The same result should be reached here for even more compelling reasons. Petitioner's trial counsel retained his own DNA expert who reviewed the procedures the MSP lab used to test Petitioner's DNA, and found them to be proper. (Doc. 8-33 at PgID 3412). And Helton was thoroughly cross-examined about her scientific method at trial. Moreover, the facts here are stronger than in *Harris* as it is Helton who performed the DNA analysis in this case, and unlike Barna, her proficiency has never been in question. Indeed, she was the one who took Barna's proficiency

tests for him. As in *Harris*, this court concludes that even considering Barna's proficiency examination misconduct, reliance on the DNA analysis here, combined with the other evidence, provides sufficient evidence to convict Petitioner and there is no reason to stay this matter to allow Petitioner to return to state court to present this allegedly new evidence.

  B. *Alleged Brady Violation*

Petitioner also argues this matter should be stayed to allow Petitioner to return to state court to pursue alleged *Brady* violations. Under the rule announced in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), a defendant's due process rights are violated if the government suppresses favorable evidence where the evidence is material to guilt or punishment, irrespective to the good or bad faith of the prosecution. *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003). To demonstrate a *Brady* violation, a defendant must demonstrate three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the state must have suppressed the evidence, whether wilfully or inadvertently; and (3) prejudice must have resulted. *Strickler*, 527 U.S. at 281-82; *O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007). *Brady's* obligation to disclose

applies to exculpatory evidence that is known only to the police, but withheld from the prosecution. *See Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009); *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995).

Here, it is not clear that evidence of Barna's proficiency testing misconduct amounts to impeachment evidence of Helton. A July 30, 2004, report from the MSP summarizes Barna's misconduct and exonerates Helton. (Doc. 18-5 at PgID 5322). In that report, the forensic science division commander of the Department of State Police writes:

> It had come to our attention and has been fully investigated that Mr. Barna did not complete [the 2003 proficiency examination] on his own. A complete investigation was conducted by our agency which included extensive review of Mr. Barna's tests and the individual who assisted him, Ms. Lynne Helton. As a result of our investigation, we are confident Ms. Helton's tests were completed on her own. **Any assistance she provided to Mr. Barna was as a result of inappropriate directives or misleading and false information given to her by her supervisor, Mr. Barna.** Mr. Barna is no longer employed with the Michigan State Police Forensic Science Division.

*Id.* (emphasis added). Barna was dismissed for misconduct, but Helton was exonerated in the investigation. Petitioner also relies on attorney argument in the *Carter* case that Helton's assistance to Barna spanned over several years and was not a one time occurrence. (Doc. 18-

3 at PgID 5301-04). But there is no dispute that Barna resigned prior to July, 2004, nearly three years prior to the collection and analysis of DNA evidence in this case.

Even if the evidence could have been used to impeach Helton, there is no *Brady* violation where the evidence is available to the defendant from another source. *Abdur'Rahman v. Colson*, 649 F.3d 468, 474 (6th Cir. 2011). The Sixth Circuit has held that "*Brady* does not apply to materials that are not 'wholly within the control of the prosecution.'" *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003) (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998)). In *Harris, supra*, the Petitioner discovered evidence of Barna's proficiency testing misconduct in 2005 from a source other than the government, and Petitioner likewise could have discovered the information himself from other sources during that same time period. Also, one year before Petitioner's trial, in *People v. Leiterman*, No. 265821, 2007 WL 2120514, at * 12 (Mich. Ct. App. July 24, 2007), the Michigan Court of Appeals affirmed the trial court's decision to exclude evidence that Charles Barna had been forced to resign after it was discovered he had cheated on a required proficiency examination, even where Barna had supervised the DNA subunit of the state police crime lab during the initial

testing of evidence. In that case, the defendant represented that Barna's resignation over the proficiency examination misconduct was "common knowledge." *Id.* Even the *Harris* or *Leiterman* cases themselves would have put Petitioner on notice of the evidence prior to his trial in July and August, 2008.

Moreover, there can be no *Brady* violation here because there has been no showing of prejudice. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682 (1985). Here, even if the prosecution had disclosed evidence that Helton took her superior's proficiency examination for him at his direction in 2003, there is not a reasonable probability that this would have undermined the reliability of her DNA analysis in 2007.

C. *Alleged Ineffective Assistance of Counsel*

Next, the court considers Petitioner's request that the court hold his habeas petition in abeyance so he can pursue an ineffective assistance of counsel claim in state court arising out of his trial counsel's failure to

request a *Daubert* hearing as to Veneta Friend and Helton's testimony. Friend was an evidence technician who located a used condom at the crime scene, took crime scene photographs, and used gloves and tongs to collect the condom for transportation to the police station. (Doc. 8-15 at PgID 2321). There has been no new evidence pertaining to Friend's credibility or reliability. Thus, any claim of ineffective assistance for trial counsel's failure to obtain a *Daubert* hearing as to Friend is time-barred.

Petitioner's ineffective assistance claim for his trial counsel's failure to request a *Daubert* hearing as to Helton's testimony fares no better. Petitioner argues he should be allowed to return to state court to have a *Daubert* hearing to challenge Helton's conclusions and methods based on Barna's misconduct that he learned about from the *Carter* case. But Petitioner has presented no new evidence calling into question Helton's scientific methods and findings. In fact, Petitioner's own DNA expert confirmed that the MSP procedures were proper. Also, in the *Carter* case, after conducting a *Daubert* hearing, the trial court granted the government's motion to allow Helton to present DNA evidence, even over defendant's objections that the proficiency examination misconduct invalidated her findings. (Doc. 18-4 at PgID 5321). Petitioner has not demonstrated any

likelihood that a *Daubert* hearing in his case would have a different outcome. His claim that Helton "cut corners" is not a part of the *Carter* transcript which forms the basis for his motion for reconsideration.

D.   *Untimeliness*

Finally, because the new claims Petitioner seeks to pursue in state court while holding his habeas petition in abeyance here would be time-barred by AEDPA, Petitioner's motion for reconsideration and to stay shall be denied. The statute of limitations runs from the latest of four dates, two of which are relevant here:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1)(A)(D). The date under § 2244(d)(1)(A) is May 8, 2011 because the Michigan Supreme Court denied leave to appeal in Petitioner's direct appeal on February 7, 2011 and Petitioner had 90-days

-12-

to seek certiorari in the United States Supreme Court. Thus, May 8, 2011 was the date of "the expiration of the time for seeking [direct] review." The statute of limitations period was then tolled during Petitioner's state court post-conviction motions. Petitioner filed his motion for relief from judgment in the trial court on April 17, 2012. At that time, 21 days remained of the limitations period. His state court collateral review ended when the Michigan Supreme Court denied his application for leave to appeal on October 31, 2017. Thus, Petitioner had until November 21, 2017 to raise his habeas claims. Petitioner filed his motion for reconsideration on October 9, 2018.

Petitioner argues the claims are not time-barred because evidence of Helton's alleged misconduct was suppressed, and was only recently discovered. Petitioner argues that the MSP entered a "gag order" that prevented information about Barna's resignation from being made public. (Doc. 16-1 at PgID 5123-24), but it is unclear when this order was entered or how long it was in effect. A letter from forensic science division commander Michael Thomas in July, 2004, which was part of the *Harris* record, demonstrates that the information was a matter of public record at that time. (Doc. 18-5 at PgID 5322). For the reasons discussed previously

in this opinion, Petitioner has not demonstrated that the evidence of Barna's misconduct could not have been discovered prior to November 21, 2017. Petitioner could have learned of the Barna investigation and termination prior to that date as Harris learned of that investigation in 2005 and Leiterman knew at least as early as 2007. Also, there was no *Brady* violation at all as the evidence could have been discovered from a source other than the prosecution as it was for Harris and Leiterman.

For the reasons set forth above, Petitioner's motion for reconsideration (Doc. 16) and motion to stay proceedings and hold petition in abeyance (Doc. 19) are DENIED.

A certificate of appealability shall not issue. The court declines to issue a certificate of appealability, because Petitioner has not "made a substantial showing of the denial of a constitutional right," for the reasons stated above. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22.

**IT IS SO ORDERED**.

Dated: April 4, 2019

                                s/George Caram Steeh
                                GEORGE CARAM STEEH
                                UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 4, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk